IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAUGHING SMITH, LLC, | : | Civil No. 1:23-CV-01285 |
| Plaintiff, | : | |
| v. | : | |
| PPNC, INC., | : | |
| Defendant. | : | Judge Jennifer P. Wilson |

# MEMORANDUM

Before the court is an unopposed motion for default judgment seeking statutory damages and a permanent injunction filed by Plaintiff, Laughing Smith, LLC, arising from Defendant PPNC, Inc.'s trademark infringement.[1] (Doc. 18.) For the reasons that follow, Plaintiff has established that it is entitled to a permanent injunction. It has not, however, established that Defendant engaged in counterfeiting so as to entitle Plaintiff to statutory damages under the Lanham Act. The court, thus, will grant in part and deny in part Plaintiff's motion.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Laughing Smith, LLC ("Laughing Smith") is in the "novelty toys and prank products" business. (Doc. 1, ¶ 10.) One of their products is "water beads," *i.e.*, "beads that grow when wet." (*Id.* ¶ 11.) Laughing Smith markets

---

[1] Although the motion is styled a "motion for statutory damages and permanent injunction," the court interprets the motion as a motion for default judgment pursuant to Federal Rule of Civil Procedure 55.

1

their water beads as "Bubble Beads" and owns a registered trademark for that mark.  (*Id.* ¶ 13.)  Laughing Smith sells Bubble Beads to "distributors, retailers, and end users," throughout the country and internationally.  (*Id.* ¶ 15.)  The "Bubble Beads" trademark has become valuable to Laughing Smith through the commercial success of its product, and Laughing Smith claims that the mark "is known and recognized by consumers throughout the United States and the world as identifying water beads products that has its [sic] source, origin or sponsorship with Laughing Smith."  (*Id.* ¶¶ 17, 19.)

Defendant PPNC, Inc. ("PPNC") manufactures and sells water beads products similar to those Laughing Smith sells, but the two companies have no affiliation.  PPNC sells their water beads under the mark "Bubble Beadz."  (*Id.* ¶ 21.)  Laughing Smith made PPNC aware that PPNC's use of the Bubble Beadz mark constituted, in its mind, infringement of Laughing Smith's mark and "create[d] a likelihood [of] or actual confusion in the marketplace."  (*Id.* ¶ 22.)  Nevertheless, PPNC continued to use the Bubble Beadz mark in selling its water beads product.  This suit followed.

Laughing Smith filed the operative complaint on August 2, 2023, which included trademark infringement and unfair competition claims under both federal and Pennsylvania law.  (Doc. 1.)  The complaint was served on PPNC via certified mail on August 22, 2023.  (Doc. 4.)  PPNC has yet to answer the complaint.

Laughing Smith sought and ultimately received entry of default against PPNC on October 12, 2023.  (Docs. 7, 9.)  Laughing Smith's instant motion for default judgment and a brief in support followed on February 9, 2024.  (Docs. 18, 19.)  PPNC did not respond to Laughing Smith's motion.  The motion is, therefore, ripe for review.

## JURISDICTION

The court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because the case arises under the laws of the United States.  The court has supplemental jurisdiction over Laughing Smith's state law claims pursuant to 28 U.S.C. § 1367.  Venue properly lays in this court pursuant to 28 U.S.C § 1391.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 55 permits courts to enter a default judgment following an entry of default.  FED. R. CIV. P. 55(b)(2).  Parties seeking default judgment, however, are not entitled to it *per se*.  *BMO Harris Bank N.A. v. JRD Trucking, LLC*, No. 3:21-cv-02161, 2022 WL 18635326, at *3 (M.D. Pa. Sept. 13, 2022).  Rather, entering a default judgment "is left primarily to the discretion of the district court."  *Bugg v. Just Wing It, LLC*, No. 18-cv-02399, 2020 WL 1675953, at *2 (M.D. Pa. Apr. 6, 2020) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3rd Cir. 1984)).  Three factors guide the court's exercise of

discretion: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3rd Cir. 2000). In considering these factors, the court proceeds knowing "the factual allegations in the complaint are treated as proven, except for the contentions related to damages." *Bugg*, 2020 WL 1675953, at *3 (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3rd Cir. 1990)).

The *Chamberlain* analysis is not, however, the sole consideration. The court also must be satisfied that the "unchallenged facts constitute a legitimate cause of action." *United States v. Kline*, 18-cv-02174, 2019 WL 1354150, at *2 (M.D. Pa. Mar. 26, 2019) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2688 (3d ed. 2007)).

## DISCUSSION

**A. Default Judgement is Warranted**

As a threshold matter, the court analyzes the sufficiency of Laughing Smith's state law claims under the same standard as its federal claims. "The test for [Pennsylvania] common law trademark infringement and unfair competition is essentially the same as the test for infringement and unfair competition under the Lanham Act." *Giannone v. Giannone*, 429 F. Supp. 3d 34, 39 (E.D. Pa. 2019) (quoting *Gideons Int'l, Inc. v. Gideon 300 Ministries, Inc.*, 94 F. Supp. 2d 566, 580

(E.D. Pa. 1999)). Laughing Smith's two federal claims are for trademark infringement in violation of 15 U.S.C. § 1114 and unfair competition in violation of 15 U.S.C. § 1125.

Proving a violation of either Section 1114 or Section 1125 requires Laughing Smith to show: "(1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3rd Cir. 2000). The first two elements of the claim are easily satisfied here, because Laughing Smith has proffered its trademark registration certificate. *See Members First Fed. Credit Union v. Members 1st Fed. Credit Union*, 54 F. Supp. 2d 393, 403 (M.D. Pa. 1999) ("Registration of a mark under the Lanham Act constitutes *prima facie* evidence of a mark's validity and its ownership by a registrant.").

As for the third element, "[a] likelihood of confusion exists when consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Pa. State Univ. v. Vintage Brand LLC*, 4:21-cv-01091, 2024 WL 456139, at *22 (M.D. Pa. Feb. 6, 2024) (quoting *A & H Sportswear*, 237 F.3d at 211). The Third Circuit has developed a muti-factor test to analyze the likelihood of confusion between marks. *See generally Interpace Corp. v. Lapp, Inc.*, 721 F.2d

460 (3rd Cir. 1983). When goods are in direct competition, however, courts need "consider only the similarity of the marks themselves" when analyzing this element. *A & H Sportswear*, 237 F.3d at 214.

Here, the likelihood of confusion is unmistakable. Laughing Smith is attempting to protect its "Bubble Beads" trademark—which it uses on toy water beads—against PPNC's use of "Bubble Beadz" on identical toys. As alleged, the marks are "substantially similar" in "appearance, sound, connotation, and commercial impression." (Doc. 1, ¶ 24.) Laughing Smith's allegations easily establish a likelihood of confusion. Accordingly, Laughing Smith has established causes of action under the Lanham Act and state law.

Moving to the *Chamberlain* factors, the court is satisfied that they weigh in favor of granting default judgment. The first *Chamberlain* factor asks whether denial of default judgment would prejudice Laughing Smith. It is clear that denying Laughing Smith judgment would lead to continued harm to its business and hinder the ability to protect its trademark. *Cf. JUUL Labs, Inc. v. Zoey Trading LLC*, 21-cv-19299, 2022 WL 970412, at *6 (D.N.J. Mar. 31, 2022) (finding denial of default judgment prejudicial to plaintiff in trademark infringement claim). The second *Chamberlain* factor asks whether PPNC has a litigable defense. "Where a party completely fails to respond to the claims against it, this factor weighs in favor of granting default . . . ." *Bugg*, 2020 WL 1675953,

at *5.  Since PPNC has put forth no appearance nor defense in this action, it is unlikely PPNC has a litigable defense.  Finally, the third *Chamberlain* factor asks whether PPNC's delay is due to culpable conduct, meaning conduct "taken willfully or in bad faith."  *Id.*  A presumption of bad faith arises when "a defendant fails to respond to a complaint and offers no reason for its failure to engage in the action."  *Id.*; *accord Travelers Cas. & Sur. Co. of Am. v. Perlman*, 351 F. Supp. 3d 930, 933–34 (E.D. Pa. 2019) (finding failure to respond to complaint after being served properly "culpable conduct").  Here, PPNC was properly served and nevertheless failed to respond to the complaint.[2]  Default, therefore, is a product of PPNC's culpable conduct.  Having found that the *Chamberlain* factors weigh heavily in favor of default judgment and that Laughing Smith's allegations establish a trademark infringement case, the court concludes that Laughing Smith is entitled to default judgment.

    **B. Damages**

Laughing Smith seeks $50,000 in statutory damages under 15 U.S.C. §§ 1117(b) and (c) for PPNC's trademark infringement.  (Doc. 19, pp. 4–5.)[3]  By its plain language, Sections 1117(b) and (c) limit statutory damages to cases involving the "use of a counterfeit mark."  15 U.S.C. § 1117(b), (c).  These

---

[2] PPNC interestingly has, however, responded to certain of Laughing Smith's interrogatories, Doc. 19-1, making their failure to respond to the complaint appear even more willful.

[3] For ease of reference, the court uses the page numbers from the CM/ECF header.

sections are distinct from Section 1117(a), which concerns the broader category of any trademark violation under the Lanham Act. *See Avco Corp. v. Turn & Bank Holdings, LLC*, 659 F. Supp. 3d 483, 494–95 (M.D. Pa. 2023).

Laughing Smith argues that the "obvious likelihood of confusion" between its registered Bubble Beads mark and PPNC's Bubble Beadz mark entitles it to statutory damages under Sections 1117(b) and (c). (Doc. 19, p. 4.)  Laughing Smith's argument by implication is that the existence of a likelihood of confusion is tantamount to counterfeiting.  Yet, this is not the standard for counterfeiting. Counterfeiting requires a higher degree of similarity between marks than does trademark infringement. *Lontex Corp. v. Nike, Inc.*, 107 F.4th 139, 158 (3rd Cir. 2024).

The term "counterfeit" is statutorily defined as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark."  15 U.S.C. § 1127.  In interpreting "substantially indistinguishable," courts have found that a mark differing from a registered mark by a few letters is not a counterfeit. *See Lontex Corp. v. Nike, Inc.*, 384 F. Supp. 3d 546, 557 (E.D. Pa. 2019) (collecting cases).  For instance, toothpaste bearing the name "Colddate" was not a counterfeit of "Colgate" toothpaste, even when the two marks were on boxes with similar graphical elements. *Colgate-Palmolive Co. v. J.M.D. All-Star Imp. & Exp. Inc.*, 486 F. Supp. 2d 286, 291 (S.D.N.Y. 2007); *see also, e.g.*, *Waiter.com, Inc. v.*

*Waitr, Inc.*, 2:16-cv-01041, 2016 WL 7443656, at *4 (W.D. La. Dec. 22, 2016) (finding "waitr" trademark was not a counterfeit of "waiter.com" trademark). These holdings reflect the well-established proposition that a "colorable imitation" does not rise to the level of counterfeiting. *See Lontex*, 107 F.4th at 158.

Laughing Smith provides no factual basis for the court to conclude that PPNC used a counterfeit mark. Laughing Smith does not allege that PPNC's mark was a counterfeit, just that it was very similar to Laughing Smith's. (*See* Doc. 1, ¶ 24 ("The appearance, sound, connotation, and commercial impression of the Defendant's Mark to identify water products is [sic] *substantially similar* to the Plaintiff's Mark . . . .") (emphasis added).) Nor does Laughing Smith provide the essential evidence necessary to determine if PPNC engaged in counterfeiting: how the marks were actually used in commerce. *See Lontex*, 107 F.4th at 158 ("We measure the similarity of two marks by comparing the 'overall impression' ordinary consumers would have upon encountering the marks."); *Colgate*, 486 F. Supp. 2d at 291 ("[A]n allegedly counterfeit mark must be compared with the registered mark as it appears on actual merchandise to an average purchaser."). Nothing in the record illustrates to the court how consumers would encounter these marks in the marketplace. Therefore, the court cannot conclude, on the record before it, that PPNC's mark is a counterfeit under the Lanham Act.

As noted, statutory damages are limited to counterfeiting cases. *See* 15 U.S.C. § 1117. Laughing Smith cites no authority to support the awarding of statutory damages for ordinary trademark infringement under Sections 1117(b), (c), or any other provision. Laughing Smith's motion for statutory damages, therefore, must be denied.

Laughing Smith's motion for default judgment only sought the statutory damages reserved for counterfeiting cases. It presented no argument as to Laughing Smith's entitlement to other damages available to plaintiffs for ordinary trademark infringement, such as "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the cost of the action." 15 U.S.C. §1117(a). Nor did Laughing Smith seek a hearing to present evidence on such damages. Accordingly, Laughing Smith has failed to meet its burden to prove it is entitled to damages.

**C. Injunctive Relief**

Laughing Smith also seeks a permanent injunction enjoining PPNC from infringing on the Bubble Beads trademark. A party moving for a permanent injunction must show: "(1) it will suffer irreparable injury, (2) no remedy available at law could adequately remedy that injury, (3) the balance of hardships tips in its favor, and (4) an injunction would not disserve the public interest." *TD Bank N.A. v. Hill*, 928 F.3d 259, 278 (3rd Cir. 2019).

As to the first factor, Laughing Smith claims that a trademark infringement demonstrates an irreparable injury as a matter of law, relying on *S & R Corp. v. Jiffy Lube International*, 968 F.2d 371, 378 (3rd Cir. 1992). (Doc. 19, p. 6.) This is no longer the law of this circuit. *See Ferring Pharm., Inc. v. Watson Pharm., Inc.*, 765 F.3d 205, 217 (3rd Cir. 2014). The *Ferring* court made clear that a Lanham Act violation does not give rise to a presumption of irreparable harm for purposes of seeking an injunction. *Id*. Rather, Laughing Smith must establish that it "is likely to suffer irreparable harm if an injunction is not granted." *Id*. "Loss of control of reputation, loss of trade, and loss of good will" are all bases that can give rise to irreparable harm. *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 195 (3rd Cir. 1990). Here, the marks of the two companies are substantially similar and are used on the same type of toy product. If allowed to continue, PPNC's infringement of Laughing Smith's trademark and the resulting consumer confusion make it likely that Laughing Smith would suffer a loss of control of its reputation, loss of trade, and/or loss of good will. This sufficiently satisfies the first factor.

As to the second factor, the injuries mentioned above are the types of injuries that legal remedies cannot adequately address. *See Crocs, Inc. v. Dr. Leonard's Healthcare Corp.*, 21-cv-13583, 2022 WL 3754858, at *4 (D.N.J. Aug.

30, 2022) (explaining damage to reputation and good will did not have adequate remedy at law).  Thus, this factor is also satisfied.

As to the third factor, the balance of harms weighs in Laughing Smith's favor.  Any hardship PPNC would experience from an injunction would simply be of PPNC's own making.  *See Platypus Wear, Inc. v. Bad Boy Club, Inc.*, No. 08-cv-02662, 2009 WL 2147843, at *8 (D.N.J. July 15, 2009) (emphasizing that defendant would not be subject to harm from permanent injunction if it had not infringed plaintiff's mark); *see also Opticians*, 920 F.2d at 197 (stating that defendant "can hardly claim to be harmed, since it brought any and all difficulties occasioned by the issuance of an injunction upon itself").  The third factor, therefore, weighs in favor of Laughing Smith.

Finally, as to the fourth factor, the consumer confusion that trademark infringement creates is detrimental to public interest.  *S & R Corp.*, 968 F.2d at 379.  Accordingly, an injunction in this case to prevent ongoing trademark infringement would serve the public interest.  Having satisfied the traditional four-part test for injunctive relief, Laughing Smith is entitled to a permanent injunction enjoining PPNC's future trademark infringement.

## CONCLUSION

For the reasons set forth above, Laughing Smith is entitled to default judgment in the form of a permanent injunction enjoining PPNC's future trademark infringement. Laughing Smith has, however, failed to demonstrate it is entitled to statutory damages for counterfeiting under 15 U.S.C. § 1117(a). Therefore, the court will grant in part and deny in part Laughing Smith's motion. An appropriate order will issue.

                                                  s/Jennifer P. Wilson
                                                  JENNIFER P. WILSON
                                                  United States District Judge
                                                  Middle District of Pennsylvania

Dated: September 20, 2024